**Joseph MASSARO, Petitioner– Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

No. 00–2720.

United States Court of Appeals, Second Circuit.

Nov. 2, 2001.

David N. Kelly, Assistant United States Attorney for the Southern District of New York; Mary Jo White, United States Attorney, and Celeste L. Koeleveld, Assistant United States Attorney, on the brief, New York, NY, for petitioner-appellant.

Herald Price Fahringer of Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, LLP; Erica T. Dubno on the brief, New York, NY, for respondent-appellee.

Present STRAUB, KATZMANN, and MAGILL *, Circuit Judges.

*SUMMARY ORDER*

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby AFFIRMED.

Petitioner–Appellant Joseph Massaro appeals from an order entered in the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge*) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. On appeal, Massaro contends that the District Court incorrectly determined that his claims of ineffective assistance of counsel were procedurally barred. For the foregoing reasons, we reject Massaro's claims and deny his petition for a writ of habeas corpus.

FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 1993 a jury found Massaro guilty of numerous racketeering crimes, including murder, extortion, arson, and loansharking. Massaro, a member of the Luchese Organized Crime Family, ran an organization called the Entertainment Plus Agency that booked topless dancers for clubs on Long Island. In the late 1980's, Massaro sought to expand his control over Long Island's topless bar industry and engaged in a campaign of intimidation against club owners who would not utilize his services. In 1989, Massaro discovered that one of his associates, Joseph Fiorito, was stealing from him. Together with another associate, Massaro lured Fiorito to an empty house where Massaro shot Fiorito once in the head. When transporting the body in an automobile Massaro discovered that Fiorito was not dead, and therefore shot him again in the head. On September 21, 1989, New York City police discovered Fiorito's body, still in the car where he had been shot for the second time. Although the police found a spent shell casing in the car, they did not initially find a bullet or blood in the front seat. The car was released from state custody without being thoroughly searched. Massaro was arrested in 1992 after an associate, Patrick Esposito, who was cooperating with police provided information implicating Massaro.

Trial commenced on September 7, 1993. Several days before trial, the new owner of the car in which Fiorito's body was found discovered a hole in a floorboard and a bullet. On September 6, 1993, the government was advised of the discovery but did not inform Massaro's counsel until September 11th. In the meantime, Massaro's counsel had delivered an opening statement arguing that Esposito alone murdered Fiorito and that no physical evidence linked Massaro to the crime. On September 23, 1993 the prosecution for the first time raised the issue of the bullet with the court. At that time, Massaro

* The Honorable Frank J. Magill, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

neither sought to preclude the bullet nor requested a continuance pending forensic results. On September 27, 1993, the prosecution advised Massaro that the bullet matched fragments recovered from Fiorito's body and had been fired by the same gun. Massaro then moved to preclude admission of the bullet due to the late discovery. The court rejected the motion but offered a continuance so that Massaro's counsel could examine the evidence and adjust his legal strategy. Massaro's counsel declined the continuance.

Massaro was convicted on all counts and sentenced to life imprisonment, a $240,000 fine, and restitution. On direct appeal, we affirmed Massaro's conviction in an unpublished order, *United States v. Massaro,* 57 F.3d 1063 (2d Cir.1995) (unpublished order), and the Supreme Court denied certiorari, *see Massaro v. United States,* 516 U.S. 933, 116 S.Ct. 341, 133 L.Ed.2d 239 (1995). Massaro then filed a petition for habeas corpus pursuant to 28 U.S.C. § 2255 alleging several grounds upon which he should be granted a new trial. The District Court rejected all of Massaro's arguments. In addition to rejecting most arguments on the merits, the court found that several of his claims were procedurally barred because they were not raised on direct appeal. The District Court, however, granted Massaro a certificate of appealability on the issue of whether it correctly determined that Massaro's claim that his counsel acted ineffectively when he refused a continuance was procedurally barred. On March 14, 2001, we expanded the certificate of appealability to include a second issue, namely, "whether the district court correctly found that appellant's claim that his trial counsel acted ineffectively when he refused to allow appellant to testify was procedurally barred based on appellant's failure to raise the claim on direct appeal."

DISCUSSION

Massaro's first argument is that he was denied a fair trial when his trial counsel failed to accept a continuance after the government sought to introduce the bullet into evidence. The District Court found that this claim was procedurally barred because Massaro's appellate counsel failed to raise it on direct appeal. As a general matter, a federal prisoner cannot employ § 2255 to litigate issues that could have been, but were not, raised on direct appeal. *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993). Failure to raise a claim on direct appeal ordinarily results in procedural default precluding appellate review of the issue. *United States v. Helmsley,* 985 F.2d 1202, 1205 (2d Cir.1993). In *Billy–Eko v. United States,* 8 F.3d 111 (2d Cir.1993), we created a limited exception to this general rule for ineffective assistance claims. Because when one attorney serves as both trial and appellate counsel it is unlikely that an attorney would raise an ineffective assistance claim against himself, such claims will not ordinarily be procedurally barred even if not raised on direct appeal. *Billy–Eko,* however, made clear that when (1) the defendant was represented by new counsel on direct appeal, and (2) when the ineffective assistance claim was based "solely on the record developed at trial," the normal rules of exhaustion will still apply. 8 F.3d at 113–14. When these two conditions are met, the failure to raise ineffective assistance claims on direct appeal will be excused only if the defendant can demonstrate cause for the failure to raise the issue and actual prejudice resulting therefrom. *See id.*

In the instant case, it is undisputed that Massaro was represented by different counsel during direct appeal of his conviction. It is also clear that the basis for Massaro's claim of ineffective assistance of counsel for failure to accept a continuance

is based solely on the record adduced at trial and available to Massaro's appellate counsel on direct appeal. At trial, Massaro's counsel engaged in many discussions about the decision not to accept a continuance. For example, on September 28th, Massaro's trial counsel explained to the court that a continuance was unnecessary because a ballistics expert had already been retained and an examination of the bullet could be accomplished quickly. And in fact, Massaro's forensic expert in short order concurred with the assessment of the government experts in that the bullet matched the fragments in Fiorito's head. The fact that a new set of experts allegedly reached different conclusions after trial does not render the basis for Massaro's ineffective assistance claim outside the scope of the record adduced at trial. Moreover, each of the issues raised by Massaro's most recent forensic analysis—the absence of blood in the vehicle, the absence of blood "spatter" or other remanants, the belated discovery of the bullet after several searches—all were extensively addressed at trial. In short, the record available to Massaro's appellate counsel fully revealed the implications of the failure to accept a continuance. Therefore, Massaro's counsel should have raised the claim on direct appeal; the failure to do so means that the claim is procedurally defaulted.

When a claim is defaulted, collateral review of the claim is available only if the petitioner is able to demonstrate cause for the default and prejudice resulting therefrom. *See, e.g., Bousley v. United States,* 523 U.S. 614, 622–24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). This Massaro is unable to do. In order to demonstrate cause, a petitioner must be able to show that the factual basis for a claim was not reasonably available, despite the exercise of reasonable diligence. *See Helmsley,* 985 F.2d at 1205–08. As discussed immediately above, the basis for Massaro's claim was fully available to his appellate counsel. Thus, Massaro would be unable to establish cause necessary to overcome a procedural default.

Massaro's other claim is that the District Court erred in concluding that Massaro's ineffective assistance of counsel claim based on counsel's alleged refusal to allow Massaro to testify was procedurally barred. Here, the government agrees with Massaro that the District Court erred in dismissing this aspect of Massaro's § 2255 petition as procedurally barred. The government does so in light of *Chang v. United States,* 250 F.3d 79, 84 (2d Cir. 2001), where we held that a petitioner's ineffective assistance claim based on counsel's refusal to allow the petitioner to testify was not procedurally barred by failure to raise the claim on direct appeal. *Chang,* however, is easily distinguishable from the instant situation. In *Chang* we explicitly noted that the petitioner's claim "involve[d] off-the-record interactions with his trial counsel and therefore cannot be determined by examining the motion, files, and records before the district court." Because the claim in *Chang* was not based solely on the trial record, the claim fell within *Billy–Eko* and thus was not procedurally barred. The other cases cited by Massaro similarly involve allegations of improper conduct or other circumstances outside the bounds of the trial court record. *See Amiel v. United States,* 209 F.3d 195, 198 (2d Cir.2000) ("Appellant was represented by new counsel on direct appeal, but her claim is based on events outside the trial record, namely, counsel's alleged off-the-record statements and alleged dis-

loyal reasons for failing to pursue a reasonable trial strategy."); *Armienti v. United States,* 234 F.3d 820, 825 (2d Cir. 2000) ("These issues implicate actions taken by counsel outside the presence of the trial judge and therefore could ordinarily be resolved by him without such a hearing."). Here, Massaro has alleged no facts or circumstances surrounding his trial counsel's decision to disallow Massaro from testifying. Instead, Massaro's claim is based only on the conclusory statement that "[h]ad Mr. Massaro been allowed to [testify], there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Under such circumstances, Massaro has not alleged any facts that are outside the record developed at trial. Because Massaro was represented by different counsel on appeal, and because the facts and circumstances surrounding his second ineffective assistance claim are based on the record developed at trial, the claim is procedurally defaulted. *See Billy-Eko,* 8 F.3d at 113–14. And as with his first ineffective assistance of counsel claim, Massaro is unable to satisfy the cause and prejudice test necessary to overcome a procedural default. *See Bousley,* 523 U.S. at 622–24, 118 S.Ct. 1604.

Accordingly, the judgment of the District Court is AFFIRMED.